JOHN MURTHA v. LESTER OLSON.[1]

February 8, 1946.

No. 34,121.

*Paul C. Cooper* and *A. E. Parsons,* for appellant.
*Frank E. Dougherty* and *Leo J. Seifert,* for respondent.

THOMAS GALLAGHER, JUSTICE.

This is an appeal from an order denying defendant's motion to vacate a default judgment against him entered on February 14,

[1]Reported in 21 N. W. (2d) 607.

1945, on the ground that service of summons in the action was never made upon him. The action was for cancellation of a farm lease on certain land in Martin county wherein plaintiff was the lessor and defendant the lessee. The judgment referred to gave plaintiff the relief sought.

At the hearing on the motion, affidavits and oral testimony were presented. The sheriff's return of service certified that on January 20, 1945, he served the summons and complaint on defendant by leaving copies thereof at defendant's last usual place of abode with one Reinhold Zutz, a person of suitable age and discretion then resident therein.

The affidavits and oral testimony indicated that Reinhold Zutz was then the owner of and resident upon a farm in Faribault county. His son John resided with him there and also owned a farm about a mile away. On the son's farm there were buildings, but no one resided therein.

Defendant's affidavit affirmed that defendant was not served with summons or process; that copies of the summons and complaint were left at the residence of Reinhold Zutz on January 24, 1945, but that defendant on that date was not a resident therein nor of said county; that he was then a resident of Freeborn county and not present at the Zutz home at the time service was made; that he had stopped at said Zutz home only once or twice in passing through said county. He testified that he was unmarried and traveled about substantially during the winter months buying and selling horses; that he owned farm equipment and that during the month of January 1945 such equipment was on a farm he had rented in Freeborn county; that he had remained on said farm during the farming season, but that during the winter he was away from it quite frequently; that during the winter he had horses scattered throughout the county on different farms, including the farm he rented; that the farm equipment had remained upon the Freeborn county farm until the last week of February 1945, when he removed it to the Becker farm near Elmore; that he had never stayed at the Zutz, Sr., farm, but had slept at the son's

farm one night during threshing season when he worked there; that he had registered for the draft at Blue Earth in Faribault county; that his father and mother lived at Fairmont; and that he did not receive the summons and complaint from Zutz, Jr., until the last full week of February 1945.

John Zutz testified that he lived upon his father's farm; that he knew defendant, who on occasions had helped him thresh; that on January 20, 1945, defendant had visited at the home of Zutz, Sr., and left his car on the road in front thereof; that on that date he and defendant went to Albert Lea and returned that night, but that defendant did not stay at said home that evening or the next day; that at one time defendant had left some horses on his farm; that defendant never slept at his house or his father's house, to his knowledge; that at one time he had advised defendant that he might sleep in one of the buildings on his farm and that he was of the belief that defendant had stayed there for one night some time prior to January 20, 1945; that he had given copies of the summons and complaint to defendant some three or four weeks after they were left at his father's house. No testimony was submitted on the part of Zutz, Sr., or his daughter, who resided with him, both declining to participate in the proceedings and neither of the parties undertaking to subpoena them.

In opposition to the foregoing, plaintiff presented affidavits of the sheriff and of Burton and Tressa Butler, as well as oral testimony by the sheriff. In substance, the sheriff's affidavits and testimony affirmed that he had served defendant on January 20, 1945, by leaving copies of the summons and complaint with Zutz, Sr., at his farm; that at that time he was advised by Zutz, Sr., that defendant had been there but left that morning for Albert Lea with Zutz, Jr., and was in the habit of coming to his farm and staying for several days at a time and would be back there that evening; that at that time he had observed defendant's car parked in front of the house with his clothes and suitcase therein and his driver's license attached to the steering wheel. In one affidavit he stated that shortly prior to January 20, 1945, defendant had brought an

action of replevin to recover a certain horse which defendant claimed had been unlawfully taken from him on the Zutz, Sr., farm. In the other affidavit he stated that on April 25, 1945, after the entry of judgment, he had talked with Zutz, Sr., on the latter's farm and had been advised by him then that Zutz, Jr., had delivered the summons and complaint to defendant on January 21, 1945, in the presence of Zutz, Sr., and that during the winter of 1944-1945 defendant had stayed and worked on the Zutz, Sr., farm.

Burton Butler, a prospective tenant for plaintiff's land if the cancellation action here was successful, in his affidavit set forth that at the request of plaintiff's counsel he had delivered the summons and complaint to the sheriff for service upon defendant and had observed the sheriff proceeding toward the Zutz farm on January 20, 1945, presumably to make such service; that on January 22, 1945, he had talked with defendant at his (Butler's) home and at that time had been advised by defendant that "the papers had been served by plaintiff"; that he then had some further conversation with defendant concerning payment for certain plowing which defendant had done upon the land involved in the action. Tressa Butler affirmed that she had overheard the conversation between her husband and defendant and had heard defendant state that "papers had been served upon him by the sheriff of Faribault county and that plaintiff was going to cancel the lease he had with defendant."

The foregoing summarizes all the evidence submitted on the question of defendant's domicile. Based thereon, the trial court denied defendant's motion to set aside the service of process and vacate the judgment, holding that the sheriff's certificate of service had not been overcome by the clear and convincing evidence required, and, in particular, referring to the uncontroverted affidavits of Mr. and Mrs. Butler as sufficient to sustain his conclusion.

The rule applicable here is set forth in Kueffner v. Gottfried, 154 Minn. 70, 72, 191 N. W. 271, 272, where this court stated:

"* * * The question was one of fact, and, in reviewing the court's decision, we are governed by the familiar rule that there

should not be a reversal if the statements in conflicting affidavits might lead different minds to opposite conclusions as to the fact in question. * * * The foundation for the rule is less substantial where all the evidence is documentary than where it comes from witnesses whom the court sees and hears. * * *

"Upon the issue presented, the sheriff's return was strong evidence in plaintiffs' favor. To overcome its effect as prima facie evidence, the proofs must be 'clear and satisfactory,' [citing cases]. Of course all the statements in the return were not entitled to the same weight. The delivery of the summons * * * was a fact within Ehrmanntraut's personal knowledge, but whether the house was defendant's usual place of abode would have to be determined from information he received and a consideration of such facts as were within his personal knowledge. This part of his return was entitled to less weight than the other parts."

In the case cited, the same question—the place of usual abode of defendant there—was involved. The sheriff there submitted his affidavit to the effect that he had personal knowledge that at the time service was made defendant was making her home with her mother in the house in which such service was made; that he had gained such knowledge by going there at various times to serve papers on different members of defendant's family, and by inquiry of an employe there who had advised him on the date of service that defendant still resided there, and that, from his personal acquaintance with members of the family and from the information obtained as outlined, he knew that the place where service was made was defendant's place of usual abode on the date of service. Defendant there presented ten affidavits, including her own, challenging the sheriff's return. She affirmed that she was not living in the house in question at the time of service, and gave various residences where she had lived since her removal from the family home some time prior to the date of service. The other affidavits submitted corroborated in detail the statements contained in her own. Notwithstanding such affidavits, the trial court upheld the service made. Its decision was sustained here on the ground that

a question of fact was involved and the evidence submitted was sufficient to support the trial court's finding thereon.

In the instant case, however, there is no tangible evidence that the farm home of Zutz, Sr., was defendant's place of usual abode. Neither the sheriff nor the Butlers were able to state definitely that of their personal knowledge such was the fact. Both Zutz, Jr., and defendant denied such residence. In the Butler affidavits it is true that the Butlers set forth that defendant admitted that the "papers had been served" upon him. Whether this was due to a mistaken belief on his part that leaving the papers at the Zutz home constituted service notwithstanding he was not resident therein, or because of information defendant may have acquired from other sources, it could not change the undisputed facts as to the manner, time, and place of service. Even if defendant received the papers from Zutz, Sr., on January 21, 1945, and assumed therefrom that service had been made upon him, if the home of Zutz, Sr., was not his place of usual abode there still would be no evidence that he had received them in due process. If he did not receive them in due process, there was no obligation on his part to respond to them. Evidence that defendant's car was parked in front of the Zutz farm, or that defendant may have stayed overnight at the farm of Zutz, Jr., some time prior thereto, or that he kept horses on one of the Zutz farms, would be insufficient to sustain a finding on the principal issue.

The statements in the affidavit of the sheriff that Zutz, Sr., some time subsequent to the entry of judgment, had stated to him that defendant had stayed at his (Zutz, Sr.) house that winter and had done chores there, was not of the type of evidence to be relied upon to sustain the finding on the issue involved. The sheriff testified at the hearing on the motion. When he sought to relate this conversation, the court properly sustained objections thereto, and we are confident that the decision was not based upon consideration of the same evidence as set forth in the affidavit. This is borne out by the court's memorandum.

The facts recited here distinguish this case from Kueffner v. Gottfried, 154 Minn. 70, 191 N. W. 271, *supra*, where the sheriff's affidavit directly affirmed that within his personal knowledge the place of service was defendant's house of usual abode. While it is true, as stated in the Kueffner case, that the sheriff's return is entitled to great weight, this rule is applicable only to those portions of the return which relate to facts within his personal knowledge. Other statements therein relating to a defendant's place of usual abode, made without direct knowledge of any kind on the part of the sheriff, have no greater weight than like statements of other witnesses based upon like foundations. In the face of the direct denials of defendant and his witnesses and the lack of other corroborating evidence, the sheriff's return was not conclusive on this point, and we hold that it was overcome by the affidavits and other testimony submitted by defendant on this issue.

The order appealed from must be reversed.

Reversed.