# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-3472

_____

Noel J. Michaud, formerly known as Noel J. Ketola

*Plaintiff - Appellant*

v.

Sarah E. Davidson

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: October 18, 2018
Filed: April 16, 2019

_____

Before SHEPHERD, KELLY, and STRAS, Circuit Judges.

_____

STRAS, Circuit Judge.

After suing Sarah Davidson for injuries arising out of a car accident, Noel Michaud attempted to serve Davidson by having a local sheriff's deputy leave a copy of the summons and complaint with Davidson's father, who then handed them to Davidson just hours later. The magistrate judge, acting by consent of the parties, dismissed Michaud's lawsuit on the theory that Minnesota does not recognize "secondhand service." *See* Minn. R. Civ. P. 4.03(a). We reverse.

I.

Michaud's lawsuit arose out of an injury she suffered in a 2010 car accident with Davidson. At the time, Davidson was a student at the University of Minnesota-Duluth, but she has since graduated and returned to Illinois, where her parents live.

Just days before the six-year statute of limitations was set to expire, Michaud sued Davidson in Minnesota state court. Michaud delivered the summons and complaint to the sheriff's office in the county where Davidson's parents lived and requested that it serve Davidson with the papers.

Davidson's father was at home when a deputy sheriff appeared at his door. When the deputy inquired whether Davidson "lived" there, her father responded that she would "be here tonight." Taking this statement to mean that Davidson lived with her parents, the deputy said that he had a summons and complaint and asked him to give them to her. Before leaving, the deputy handed the papers to Davidson's father, who then gave them to his daughter a short time later. What Michaud and the deputy did not know, however, was that Davidson no longer lived at her parents' house. Several months before Michaud filed her lawsuit, Davidson moved into a rented room to be closer to work.

Davidson removed the case to federal court. *See* 28 U.S.C. §§ 1332, 1441. After doing so, she argued that the case had to be dismissed because she was never served under Minnesota Rule of Civil Procedure 4.03(a).

The court agreed. It first found that Davidson's "usual place of abode" was not her parents' house, so the deputy could not serve her by leaving a copy of the papers there. Minn. R. Civ. P. 4.03(a) (stating that an individual may be served "by leaving a copy at the individual's usual place of abode with some person of

suitable age and discretion then residing therein"); *see also Jaeger v. Palladium Holdings, LLC*, 884 N.W.2d 601, 604–05 (Minn. 2016) (describing substitute service). It also concluded that Minnesota does not recognize "secondhand service," which is personal delivery by someone who received the papers from the original process server. Because Michaud did not properly serve Davidson before the statute of limitations had expired, the court dismissed the case with prejudice. *See* Fed. R. Civ. P. 12(b)(5). We review de novo the question presented by this case, which is whether Michaud properly served Davidson under the Minnesota Rules of Civil Procedure. *See Barner v. Thompson/Ctr. Arms Co.*, 796 F.3d 897, 900 (8th Cir. 2015).

II.

Michaud's attempt to serve Davidson occurred before the case was removed to federal court, so Minnesota law determines whether the service was effective. *See id.* As relevant here, there are two ways to serve an individual like Davidson under the Minnesota Rules of Civil Procedure: either "by delivering a copy [of the summons] to [her] personally," which is called "personal service"; or "by leaving a copy at [her] usual place of abode with some person of suitable age and discretion then residing therein," which is called "substitute service." Minn. R. Civ. P. 4.03(a); *Jaeger*, 884 N.W.2d at 604–05; *see also* Minn. Stat. § 543.19, subdiv. 2 (extending this rule to out-of-state defendants).

In *Melillo v. Heitland*, 880 N.W.2d 862 (Minn. 2016), the Minnesota Supreme Court elaborated on the requirements for personal service. In addition to personally delivering the summons, a would-be process server must "know that a summons is being served and intend to serve it." *Id.* at 864. Applying those requirements, *Melillo* held that a mail carrier who handed the defendant a summons had not personally served him because "there [was] nothing in the record

to show that the mail carrier had any idea what was in the envelope . . . ."[1]  *Id.* at 864–65.

This case is different.  In contrast to *Melillo*, Davidson's father has admitted that the deputy told him what the papers were before giving them to him, so there is no question that he knew he was delivering a summons and complaint to his daughter.

Whether he had the intent to serve his daughter is less clear, primarily because no Minnesota court has expanded upon this requirement.  Even so, we have every reason to believe that it has been satisfied here.  In our view, a simple intent to deliver the document to the intended recipient is all that is required, especially because the would-be process server must also know that a summons is being served.  *See id.*  If an intent to serve requires something more, such as knowledge of the legal consequences of delivery, then we would have expected a Minnesota court to have at least hinted so.

Davidson's father, the eventual process server in this case, intentionally delivered the papers to his daughter with knowledge of their contents.  The papers were not accidentally delivered, such as being placed in a stack of mail handed to Davidson or found on her parents' kitchen table.  Rather, her father hand-delivered the papers to her, completing the service according to Rule 4.03(a) and *Melillo*.

Davidson insists, however, that Minnesota has not adopted a rule that service can be made secondhand, "by serving the wrong person who then ultimately

---

[1]To be sure, *Melillo* also held in the alternative that a mail carrier *categorically* could not personally serve process.  880 N.W.2d at 863.  But this holding was based on the fact that—at the time—Minnesota had a separate rule for "Service by Mail." *Id.* at 864 (citing Minn. R. Civ. P. 4.05 (2017) (superseded 2018)).  This case, by contrast, involves neither a mail carrier nor service by mail, so *Melillo*'s alternate holding has no application here.

delivers the [s]ummons and [c]omplaint to the intended [d]efendant." It is true that the Minnesota Supreme Court has never expressly announced such a rule, but it came pretty close in *Melillo*, and there is nothing in the text of Rule 4.03(a) that prohibits it. The rule says that a copy of the summons must be "deliver[ed] . . . to the individual personally," but it does not say that the first person who handles it must deliver it. *See* Minn. R. Civ. P. 4.03(a); *see also id.* 4.02 (stating that "the sheriff or *any* other person not less than 18 years of age and not a party to the action[] may make service of a summons or other process" (emphasis added)). Nor does it say that the first person who tries to "deliver" it must succeed. All that must happen is that an adult with the requisite knowledge and intent personally place the summons in the defendant's hands, which is what Davidson's father did in this case. *See Melillo*, 880 N.W.2d at 864–65.

To be sure, language in several older decisions appears, at first glance, to cast doubt on the viability of secondhand service. *Cf. Thiele v. Stich*, 425 N.W.2d 580, 584 (Minn. 1988) (holding that the defendant did not receive sufficient service of process when the process server left the summons with the defendant's secretary at his office); *Murtha v. Olson*, 21 N.W.2d 607, 610 (Minn. 1946) (assuming that a defendant would not have been properly served "[e]ven if defendant [had] received the papers" from the man to whom they had erroneously been given); *Berryhill v. Sepp*, 119 N.W. 404, 404 (Minn. 1909) ("If, for example, a summons were in fact served on the wrong person, and that person handed it to the proper defendant, there would be no service."). But those decisions addressed substitute service, not personal service. *See Thiele*, 425 N.W.2d at 584; *Murtha*, 21 N.W.2d at 610–11; *Berryhill*, 119 N.W. at 404–05. And none involved the precise situation here in which knowledge and intent were both present at the time of delivery. Besides, all three decisions predate *Melillo*, which *is* about personal service and leaves open the possibility of secondhand service in an appropriate case. This is that case.

### III.

We accordingly reverse the judgment and remand for further proceedings consistent with this opinion.

SHEPHERD, Circuit Judge, dissenting.

The majority opinion, in recognizing second-hand service for personal service of process, adopts a rule of law that I believe the Minnesota Supreme Court has repeatedly indicated it would not adopt. Because the majority's conclusion is inconsistent with our role and duty as a Court sitting in diversity jurisdiction, I respectfully dissent.

> As a federal court sitting in diversity, our role is to interpret state law, not to fashion it. This Court's task with respect to an unsettled issue of state law is to predict how the highest court in the state would rule on the issue. A federal court must follow the announced state law in a diversity action unless there are very persuasive grounds for believing the state's highest court would no longer adhere to it.

Williamson v. Hartford Life & Accident Ins. Co., 716 F.3d 1151, 1154 (8th Cir. 2013) (internal quotation marks and citations omitted).

Although the Minnesota Supreme Court has never addressed this precise issue—the sufficiency of second-hand service in the context of personal service—it has expressly rejected second-hand service for substitute service of process. See Thiele v. Stich, 425 N.W.2d 580, 584 (Minn. 1988); Murtha v. Olson, 21 N.W.2d 607, 610 (Minn. 1946); Berryhill v. Sepp, 119 N.W. 404, 404 (Minn. 1909). The majority acknowledges this case law, but concludes that it is not the best evidence of how the Minnesota Supreme Court would resolve the issue currently before us. I disagree. The Minnesota Supreme Court's rejection of second-hand service for

substitute service leads me to conclude that it would be similarly unwilling to recognize the rule that the majority adopts here.

I also note the practical implications of the majority's ruling. In adopting the rule that personal service can be accomplished through second-hand service, the majority sanctions, in effect, the deputizing of neighbors, friends, or even near-strangers as process servers, so long as these individuals were aware that they had a summons and complaint and intended to provide it to the proper party. Given that the Minnesota Supreme Court has long held that Minnesota service of process rules demand strict compliance, see Jaeger v. Palladium Holdings, LLC, 884 N.W.2d 601, 609 (Minn. 2016) (Stras, J.); Berryhill, 119 N.W. at 404 (Minn. 1909), I would not adopt a reading of Minnesota law that would yield such a result.

Following "the announced state law," and given that I do not see "very persuasive grounds" for believing that the Minnesota Supreme Court would change course from its earlier precedent, Williamson, 716 F.3d at 1154, I cannot conclude that the Minnesota Supreme Court would adopt second-hand service for personal service of process. I would affirm the order of the district court dismissing the complaint for insufficient service of process. I respectfully dissent.

_____